**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 26, 2016[*]
Decided August 30, 2016

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-1462

| | |
|---|---|
| RONALD J. GRASON, <br>     *Plaintiff-Appellant*, | Appeal from the United States District <br> Court for the Central District of Illinois. |
| *v.* | No. 14-2267 |
| SYLVIA MATHEWS BURWELL, <br> Secretary of Health and Human <br> Services, et al., <br>     *Defendants-Appellees*. | Harold A. Baker, <br> *Judge*. |

**O R D E R**

Ronald Grason, a former participating physician in the Medicare program, sued the Secretary of the Department of Health and Human Services after one of its divisions, the Centers for Medicare and Medicaid Services (CMS), charged him with filing fraudulent reimbursement requests and revoked his billing privileges. An administrative law judge rejected Grason's challenge to the revocation, and the district

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

court concluded that the ALJ's decision was supported by substantial evidence. We affirm.

In 2012, a special agent with HHS's Office of the Inspector General investigated Grason's billing habits. The agent interviewed about 30 of Grason's patients—senior citizens living in the same Chicago apartment complex—and obtained visitor logs from the building. By comparing this information with Grason's billing records, the agent determined that on two days—December 23, 2011 and February 14, 2012—Grason had signed in to enter the apartment buildings, stayed no longer than fifteen minutes, and then billed CMS for providing medium-to-high complexity home visits each day to five different patients. According to the CMS billing manual, each of the home visits Grason claimed to have provided should take 40 minutes to complete. The special agent did not believe that Grason could have completed five home visits on either day in less than fifteen minutes, especially since each of the patients resided on different floors of the apartment complex's two high-rise towers.

Based on these findings, CMS's Medicare contractor informed Grason that his Medicare billing privileges were being revoked. Grason sought reconsideration, but was denied.

Grason then requested a hearing before an administrative law judge. In a pre-hearing order, the ALJ explained to the parties that she would not hold an in-person hearing unless the parties affirmatively stated in their written submissions that they wished to cross-examine the opposing party's witnesses. Neither Grason nor CMS made such a request, so the ALJ proceeded to decide the case based on the written record, and upheld the decision to revoke Grason's billing privileges. The ALJ agreed with the special agent's assessment that it would have been impossible for Grason to have provided the services he claimed to have rendered on the two days in question, and found that Grason had not produced any evidence to contradict the visitor logs produced by CMS. Grason appealed the ALJ's finding to the Departmental Appeals Board, which upheld the ALJ's decision, making it the agency's final decision.

Grason then sought judicial review, arguing that the decision was not supported by substantial evidence and that the procedures used to revoke his billing privileges violated due process. Grason further challenged an overpayment of more than $700,000 that Medicare had assessed against him. Grason also sued the Director of the Illinois Department of Financial and Professional Regulation for initiating proceedings against him to revoke his medical license; he insisted that the proceedings were premature

under the Illinois Administrative Code because he had not yet received a "final decision" from this court on the matter of his Medicare billing privileges.

The district court granted the Secretary's motion for summary judgment (and denied Grason's) based on substantial and uncontroverted evidence showing that Grason had billed Medicare for services he could not have provided. The court also concluded that the ALJ did not violate Grason's due process rights by deciding his case on the written record without an in-person hearing. Finally, the court dismissed Grason's overpayment claim as duplicative of an already-pending lawsuit,[1] and dismissed his claim against the Director of the IDFPR as "moot," given its conclusion that substantial evidence supported the agency's decision to revoke his billing privileges.

On appeal, Grason first argues that the ALJ relied on inadmissible hearsay evidence (namely, the apartment-complex-visitor logs). But in administrative adjudications such as this one, an administrative law judge may receive evidence that is not admissible in federal court under the Federal Rules of Evidence. *See* 42 U.S.C. § 405(b)(1); *Keller v. Sullivan*, 928 F.2d 227, 230 (7th Cir. 1991); 42 C.F.R. § 498.61.

Grason also argues that the ALJ overstated the time requirements of the particular code he used to bill patients for home visits. Grason maintains that an experienced, competent doctor can conduct the home visits in less than the 40 minutes recommended by the CMS manual. But, as the ALJ reasonably explained, even if Grason could have performed each visit in less than 40 minutes, "no one is capable of performing five such visits in less than fifteen minutes, particularly where, as here, doing so involves moving from floor to floor and even tower to tower."

Next Grason argues that the Departmental Appeals Board should have conducted an in-person hearing allowing him to introduce new evidence.[2] But the Board is required to hear oral arguments only if the appellant asks to appear before it, and Grason made no such request. *See* 42 U.S.C. § 1395cc(h)(1)(A) (incorporating by reference 42 U.S.C. § 405(b), (g)); 42 C.F.R. §§ 498.82, 498.85; *W. Tex. Ltc Partners, Inc. d/b/a*

---

[1] Grason has since withdrawn his complaint in the other lawsuit. *See Grason v. Center for Medicare and Medicaid Services*, No. 14-3239 (C.D. Ill. May 23, 2016).

[2] Both the district court and the Secretary construe Grason's argument as challenging the *ALJ's* decision not to hold an in-person hearing. His filings in the district court and on appeal, however, specify that he wanted an in-person hearing before the *Board.*

*Cedar Manor*, DAB No. 2652, 2015 WL 5679925, at \*1 n.1 (H.H.S. Sept. 1, 2015). Further, in the case of a provider's appeal such as this, the Board may not review evidence that was not presented to the ALJ. *See* 42 C.F.R. § 498.86(a); *Medstar Health Inc.*, DAB No. 2684, 2016 WL 2851177, at \*5 (H.H.S. Apr. 8, 2016); *1866icpayday.com, L.L.C.*, DAB No. 2289, 2009 WL 5227272, at \*2–3 (H.H.S. Dec. 16, 2009).

With regard to the IDFPR's proceedings to revoke his medical license, Grason argues that the district court should have enjoined them pending resolution of this lawsuit, and further the district court gave "no apparent reason" for dismissing that claim. We agree that the district court's rationale is confusing, but we understand its reference to mootness to mean that it was declining to exercise supplemental jurisdiction over that claim. We see no basis for the federal courts to exercise subject matter jurisdiction over this claim and, in any event, federal courts will not intervene in state administrative enforcement proceedings that allow an adequate opportunity to raise constitutional challenges. *See Younger v. Harris*, 401 U.S. 37 (1971); *Majors v. Engelbrecht*, 149 F.3d 709, 713 (7th Cir. 1998).

Finally, Grason only generally challenges the district court's dismissal of his overpayment claim as duplicative of an already pending lawsuit. Although we construe pro se filings liberally, even uncounseled litigants must supply an articulable basis for disturbing the court's judgment. *See* FED. R. APP. P. 28(a)(8)(A); *Rahn v. Bd. of Trs. of N. Ill. Univ.*, 803 F.3d 285, 295 (7th Cir. 2015); *Anderson v. Hardman*, 241 F.3d 544, 545–46 (7th Cir. 2001); *see also McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 888–89 (7th Cir. 2012) (district courts have "significant latitude" to dismiss duplicative claims); *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993).

AFFIRMED.